Yes, Dennis Reardon for Appellant Belcher. I'd like to reserve two minutes of my ten minutes of argument time for rebuttal. Dr. Belcher here challenges on appeal a single count of conviction under 18 U.S.C. 1035 for making a false statement in connection with a health care matter. Count 16 in the amended indictment involved a claim for $217 submitted to the Cigna Insurance Company for a massage therapy session provided to patient Nasteni Habibi in November of 2013. For multiple reasons, we submit that the record evidence is insufficient under Jackson v. Virginia to prove the fraud offense the government alleged in Count 16 and the theory of fraud that it argued to the jury. We raise instructional issues as well. Admittedly, the date stated in the claim for Habibi's massage session was wrong. It took place on November 22, not on November 23, as submitted in the claim. But the government never alleged or argued to the jury that misstating the date of the session in itself merited a federal conviction. Rather, the government's theory of guilt as to Count 16 was that Dr. Belcher lied to Cigna in order to cheat the company out of the $217 payment to which he was not entitled to, and he knew he wasn't entitled to. According to the government's indictment and closing argument, Dr. Belcher intentionally misled Cigna about the nature of the therapy session because he knew that the therapy session was not properly payable. That's what the indictment alleges, and that Cigna, therefore, would refuse to cover the massage therapy in Count 16. But the government never introduced any evidence that Cigna would not have paid for Habibi's massage therapy, much less that Dr. Belcher knew that they wouldn't pay for it. To the contrary, while the government introduced evidence that other health insurance might not cover massage therapy, the prosecution's evidence on Count 16 indicated that Cigna would have paid for the massage therapy, and hence our insufficiency claim. The most important witness called to testify to Cigna's policy and practice in terms of paying for massage therapy was Tammy Collar, a Cigna representative. But the government's brief does not contain the names Tammy Collar or describe her testimony, no doubt because her testimony supported the conclusion that Cigna did pay for massage services. Collar testified that the general Cigna medical coverage policy provides, quote, Cigna covers massage therapy as part of a medically necessary and covered comprehensive physical therapy plan. She testified that patients can request that massage therapy be covered, in which case it is covered. The massage therapy at issue in Count 16 had been billed under codes, including one for massage therapy, and Cigna had never had any cause to question any of Dr. Belcher's billing. On this evidence, no reasonable jury could find beyond a reasonable doubt that Cigna would not have paid for Habibi's massage therapy, nor could it find that Dr. Belcher knew that his office was not entitled to that payment, nor that he intended to defraud Cigna of the $217 payment at issue in Count 16. Rather than arguing that the fraud, it proved that the fraud alleged in the indictment, the government contends it had no obligation to prove fraud because Count 16 alleged a material false statement as to a health care matter as opposed to health care fraud under Section 1347. According to the government, it only had to prove the elements of a 1035 offense regardless of whether it proved the factual allegations in the indictment on which the 1035 charge rested. Now, we've cited a good deal of law that says from the Ninth Circuit to the Supreme Court that if you allege facts in an indictment that support a charge, you have to prove them regardless of whether they are an element. But I will confess that until our 28-J letter yesterday, I had omitted to cite the case which most definitively settles this issue, which is Judge Schroeder's opinion in United States v. Shipsy in 1999. In Shipsy, the government alleged that Shipsy stole money in violation of Section 664, which is a theft and embezzlement statute. It has no element of fraud, but the indictment alleged that he stole the money by fraudulent misrepresentations. And the panel in Shipsy unanimously held that the government had to prove those fraudulent representations and could not obtain a conviction on any other theory of theft. That's what we have here. We have an indictment filled with allegations of fraudulent representations, specifically including count 16. We have a closing argument in which the government argued that as to all six counts, individual counts against Dr. Belcher, five of which he was acquitted on, that he had an intent to defraud. So that's what they had to prove. They haven't proven it. They haven't really attempted to prove it because they have not in any way responded to Tammy Collar's evidence and Habibi's evidence about how she was entitled to massage therapy under her policy. Mr. Rudin, it's nice to see you again. Was he charged with fraud? Yes, he was charged with three counts, I believe four counts of fraud and two counts of false statements. Interestingly, he was charged with two counts of fraud involving Habibi on the same theory. Let me just finish. He was charged with two counts of fraud, but he was convicted of making a false statement. But the government in its closing argument said that our theory on all six counts, including two fraud counts as to Habibi, is that he acted with an intention to fraud because he knew he wasn't entitled to be paid for massage therapy. So that's the theory they alleged in the indictment. That's the theory they put before the jury. And that's the theory we submit that they didn't prove because they never proved that he wasn't entitled to this money. And if he was entitled to it, obviously he wasn't trying to cheat the company out of $217. And cheating is what's required if you proceed – money or property is what's required if you proceed on a theory of fraud. And for the same reasons, their theory of materiality under 1035 was, again, that his statements – the mistaken date was material because it was part of a scheme to defraud Cigna by disclosing – failing to disclose and obscuring the fact that this was massage therapy. But if they fail on the theory of fraud as to which the mistaken date was allegedly relevant or material, then they fail on that element as well. And let us say they never went to the jury on the theory, okay – the government argues it in appeal, but they never argued to the jury below, oh, okay, he may have been entitled to the money, but the mistaken date was still a material representation. No, the theory they argued was he wasn't entitled to the money, and the mistaken date was relevant to a fraudulent intent on his part to rip off Cigna for $217. We have raised just quickly in the minute left instructional claims which are related to this because concededly the fraud instructions, which the government said is irrelevant to this count – it's not for the reasons I just said – said that fraud was an intent to deceive or cheat. It's been recognized by this court and the United States Supreme Court that fraud is to deceive and cheat of property. So that was an erroneous instruction that related to the theory of fraud that the government proceeded on and also that the court denied – the trial court denied the good faith instructions on the grounds that she said all good faith instructions are nothing but closing argument. That's improper certainly because this court's law is clear that good faith instructions can be appropriate and should be given when they're needed to make clear to the jury the nature of the defense that the defendant is raising. And with that, Your Honor, I'll reserve my two minutes for rebuttal. Well, the time showing was your total time, so you've used all your time. I apologize then and the court can decide whether it wants to grant me any rebuttal. I will give you a minute for rebuttal. Ms. Rasmussen? Thank you, Your Honor. Good afternoon. I represent Vlasnik and Nash. I joined in the good faith jury instruction arguments just for the court's knowledge. I'm going to start on the counsel issue because I think it's one of the most substantial issues with regard to Dr. Ganesh. So there are – the record in this case is long and there's a lot there. But substantially, she asked for the first time on September 8th for a new lawyer and that was summarily denied. Then she asked her counsel again in October prior to the trial for him to file a motion to withdraw. What he filed was a motion to substitute counsel or to let her represent herself. I think it's important to note that my client is a U.S. citizen, but she's not a – she wasn't born here and English is not her native language. Counsel, in your view, was there something wrong with filing a motion to substitute counsel or to allow her to represent herself? No, I don't think that that was wrong, but I think that what she was wanting was another lawyer. And I think that – so I'm not sure that it was mischaracterized, but I think it could have been better stated. It doesn't really state anything in the affidavit other than she's requested that I file this. I think where it goes wrong is in the inquiry. When the magistrate court held the inquiry, he didn't do what the magistrate judge would ordinarily do, which is ask why is it that you think you need a new lawyer and get those answers from her. So in that hearing that happened on October 18th, the inquiry was, first of all, you can represent yourself, but I need to do a longer hearing, obviously a phoretic canvas. And I can't do that today. It's a bad idea. I'm sorry, you're about to ask me questions, so I'll stop talking. I want to ask you, is this the hearing where the other attorney that she wanted was present? This is the hearing where Mr. Jinkerson was present, and he said, I would represent her, but I can't if the trial is next week. So there was, yes. So there was no attorney that stood ready to represent her at that point. So what was the judge supposed to do with that circumstance? Well, the judge would have an inquiry. And the judge would, and I think magistrate, you know, in the decades I've been practicing, magistrate judges regularly hold these inquiries. What is it that your lawyer is not doing? And then if the client says something like, well, I wanted the lawyer to file this motion, and if it appears to the judge that that's kind of a frivolous avenue, not going anywhere, then the judge can say, no, your lawyer gets to decide what motions to file. He didn't make any inquiry. And that's where it violated the case law of this circuit. You have to make that inquiry. You have to decide what the conflict is. I think it's clear from the record what the conflict was. He was pursuing an insanity defense and challenging her competency, which was going nowhere and, in fact, went nowhere, and didn't spend any time preparing for trial. Had the magistrate asked questions, he could have, she could have answered some of those questions. Instead, they took a couple breaks. She was told to talk to her family. She was generally told representing herself is a bad idea. And then what she was told definitively was, you can have this lawyer, and he's a fine lawyer, or you can have no lawyer. Those were the only choices she was given. And Mr. Korowitz, he was appointed under the CJA Act at some point for reasons unknown because her family had paid him well over $100,000. He got himself appointed in September or August, right before the trial. And then the court basically said that he wasn't doing anything wrong and that he was a fine lawyer, but the court had no way of knowing that because the court made no inquiry. And, in fact, the record belies that. He didn't do anything really in terms of trial prep, and he was getting chastised by Judge Koh for failing to even file the things that he was supposed to file on the deadlines, the motions of the CJA and things of that nature. So the lack of inquiry is what's the issue here. The magistrate court has to make the inquiry as to what the conflict is. It wasn't just a matter of her having a preference for someone else. It was a matter of her feeling desperate that her lawyer wasn't doing anything to prepare for trial when, in fact, that was the case. But nobody made that inquiry. So that's the trial counsel issue. And the case law in the circuit says you have to make the inquiry. You have to make an adequate inquiry. And magistrates do this when they know that they make this inquiry. Counsel? Yes. On page 143 of the record, the court is talking about the tension by Dr. Ganesh of new counsel of her choosing. It's worded really strangely, but it seems that the judge is at least talking about some tension that was noted. Right? Right. But I think, I think, I don't. Oh, this is the one before sentencing. Is that the one before sentencing? That's the one before sentencing. Oh, okay. That's the second issue. So let me hop to that. That issue, to me, is very clear cut. She had retained counsel of her choice. They were ready to step in. They filed Pro Hoc Vitae motions. Those motions were granted. They had been retained. They said that they would be there at the sentencing hearing. One of the, I think it was Mr. Schammel noted that he already had another hearing in that court on the same date. He would be there. He was asked to be anticipated. Seeking an extension of the sentencing date, he said that he did not know at that point. He, you know, didn't know that he was going to need that, but didn't know. Why the court denied that, I have no idea. I mean, to me, it's mystery. Well, if he wasn't willing to commit that he would be ready on the date of sentencing, isn't that something the judge could consider? Certainly the court could consider that. But when you balance that against her Sixth Amendment rights to the retained counsel of her choice, whereas in the trial setting, you know, she had a retained lawyer who was potentially able to come into the case. In this scenario, she had sentencing counsel, I'll call them, who were absolutely ready and willing to come into the case. There was no reason for the denial. They said that they would be there the following week at the sentencing hearing. They knew of no impediment. I have, I wanted to reserve two minutes, and the last issue is the spreadsheets. I'd like to just jump on that for a minute, and I'll come back to it. What happened in this case is the government presented evidence, as if it were evidence of fraud, of over 40,000 claims that were not evidence of fraud at all. They were someone else's, some other doctor's legitimate claims. There is no dispute that the government did this. They concede that they did this. The question is why. And that was the basis of the motion for new trial filed by Ganesh, filed by Belcher, that Dr. Ganesh joined. And basically, the inquiry from the district court should have been, did the government know it was doing it on purpose? Did it do it intentionally, or did it do it inadvertently? Because that drives the rest of the inquiry here. Was it intentional misconduct by the government, or was it an error? That evidence of fraud that wasn't fraud infected the entire trial. And that, in and of itself, warrants reversal from this court back to the district court to hold an evidentiary hearing to determine whether the government's conduct was intentional or inadvertent or accidental. Counsel, was there any objection made to the spreadsheets? No, because nobody understood that at the time. And I'll talk about that in my rebuttal unless you want me to answer it now. That's fine. I just wanted to clarify that there was no objection to the spreadsheets at the time. That's correct. There was not. Okay. We'll hear from the government. Thank you, Your Honors. I may have pleased the court. John Pelletieri on behalf of the United States. I suppose I'll start where we left off with Ms. Ganesh and then with Mr. Belcher. With respect to the counsel issue, there are two determinations. One was pretrial, and one was at sentencing. Both are waived under Rule 59, which requires that a defendant object to a magistrate judge's order in order to preserve it for appellate review. And so Ms. Ganesh did not file objections in the district court to either determination. And so they're both waived for appellate review, and they're not properly before this court. But regardless, the magistrate judge's determinations were not in abuse of discretion. At the pretrial hearing, what prompted it was that Ms. Ganesh had contacted a lawyer. She desired that he step in and take over for trial. But at the hearing before the magistrate judge, the lawyer made clear that he was not prepared to represent her. And so under Wheaton, the Supreme Court has said that, yes, the defendant has a right to counsel of choice, but not if the counsel is not prepared to represent the defendant. And once that lawyer was not—it was clear, and the magistrate judge's determination is not thoroughly erroneous, that that lawyer was not prepared to jump in and would not jump in. The only request before the court was—well, the only options, available options, were proceed with Mr. Horowitz or a go pro se. And the magistrate judge reasonably informed Ms. Ganesh of those options, and she elected to go with Mr. Horowitz. There was no request for a new appointed counsel. And to be clear, there are different standards. The choice of counsel standard applies when a defendant wants to retain counsel of choice to come in. But there's a different standard when a defendant has been appointed counsel and wants to change that appointed counsel. We don't think that Ms. Ganesh actually requested a change, but even if you assume she did by making this reference to a civil rights lawyer, the magistrate judge gave an adequate—made an adequate inquiry. Counsel, where in the record are you referencing your position that the magistrate judge made an adequate inquiry? Oh, it was throughout that hearing, Your Honor. And I can—it was at the hearing. Point me to the page in the record that you're referencing. Yes, Your Honor. It was—I'm sorry, Your Honor. It was during the hearing at 6462 and 6463 and 6464 and throughout there. And what happened is the court learned from Mr. Horowitz that what she was complaining about was that she did not understand trial dates. She had some questions about dates and about expert witness lists. And it was—he was informed, the magistrate judge was informed that that was cleared up at 6464, that it was—the magistrate judge was informed that that had been cleared up. And there was nothing else before the magistrate judge about some irreconcilable conflict that would warrant a change in appointed counsel, which is what is required. And at the end, Ms. Ganesh had an opportunity to provide more information, and all she said was she wanted a civil rights lawyer because her First Amendment rights were being violated. And that was a—the magistrate judge was entitled to consider that a reference to a civil lawyer that was unrelated to the criminal case. So counsel, do you agree that there was no inquiry into any potential conflict between Ms. Ganesh and her attorney? Well, the magistrate judge didn't use the word conflict, but it obtained information about what was at issue here, why Ms. Ganesh wanted to retain Jinkerson. It was because she was confused about trial dates, and she didn't like the trial preparation, and she—the magistrate judge was informed that those issues were cleared up. And he was entitled to credit that and conclude that there was no breakdown of the sort that really warrants a change in counsel. But again, the court was not required to go into that inquiry because there was no request for a change in appointed counsel. There was only a request initially. The idea was that Ms. Ganesh was going to obtain a retained lawyer, but he said he wasn't available. So that really resolves that at that point in time. And again, there's waiver. And then turning to before sentencing, the district magistrate judge reasonably weighed the fairness considerations and management of the court's calendar against the right to counsel of choice. The new counsel before sentencing were not prepared to be—were not prepared to go. They specifically said, we will not be able to make a filing that's due the next day, and we reserve our right to say that going forward in a week is going to prejudice Ms. Ganesh. So they were not prepared to go forward. They had not even—I don't think they'd even received the voluminous record in this case. And the magistrate judge did not make clear error in his factual findings or abuse his discretion in denying that motion. And again— What is the waiver argument again? Well, Rule 59 of the Federal Rules of Criminal Procedure state that—and I can give you the exact language—state that a party may serve and file objections to— after being served with a copy of the order. And then it says, failure to object in accordance with this rule waives a party's right to review. And then in the committee notes, it says—explains, both Rule 59A and B contain a provision that explicitly states that failure to file an objection in accordance with the rule amounts to a waiver of the issue. This waiver provision is intended to establish the requirements for objecting in a district court in order to preserve appellate review of a magistrate's— It wasn't preserved. Yeah, but it's waiver. It's not even forfeiture. It's full-on waiver. It's for counsel? Yeah. Is there a case that interprets the rule the way that you are interpreting it? Yes, Your Honor. There are courts who have applied it in this way. There is a court that has suggested that it would lead to plain error. We don't agree with that. So the court—you know, the Fourth Circuit 658 Appendix 188 has applied it in that way at page 189. Then United States v. Islam is a D.C. circuit where, for whatever reason, even though they found waiver, they didn't make the distinction under Olano between a waiver and forfeiture. They reviewed for plain error. That's 932 F. 3rd 957. We think that's wrong. We think it's plain waiver. Do you have a 9th Circuit case? No, Your Honor. This court has not applied Rule 59, the waiver provision. Right. So turning to the spreadsheets, now there are two claims that arise from the spreadsheets from Ms. Ganesh. One is that there was trial error. There was some sort of NAPU error by the government's use of false evidence at trial. And the other is that there was newly discovered evidence under Rule 33 that justified a new trial. The trial error claim was not preserved. It was forfeited, and that is reviewed for plain error. There's no basis under either of these claims for any kind of reversible error. There's several requirements for a NAPU claim, including falsity, knowing intentional falsity. We've described in our briefs why that's not the case, but I'll just focus on the requirement of prejudice. And in this case, because it's plain error review, not only is prejudice a component of substantive NAPU claim, but on plain error review, the defendant has the burden of establishing that the error affected substantial rights. So it's kind of a double prejudice standard here. And there's no basis to conclude that anything about these spreadsheets, about this Dewey's, I guess, inclusion in these spreadsheets of legitimate claims by Dewey's had any effect on the outcome of this trial. It was – the evidence of Ms. Ganesh's fraud was voluminous and overwhelming. There were three species of fraud. One was up-billing, which she used high code to get more money. One was billing for services that were never provided. And another was billing for using Dewey's name when he left the practice because she wasn't getting reimbursement. She used her own name, so she went back and started using this other doctor's billing number. Counsel, do you take issue with opposing counsel's representation that the spreadsheets did contain claims that were legitimate? A few of the spreadsheets contained claims from Mr. Dewey's that when he left Ms. Ganesh's practice that were legitimate, that he had made for himself in his new practice. That is correct. But there's no way that inclusion of those claims in the spreadsheets could have had any impact on the trial. One is there was – they weren't – the exposure of the jury to these legitimate claims was de minimis. The only exposure was during – there's four pages during the closing arguments at 2687 to 2690, and the government mentioned three spreadsheets, 38A, 39A, and 38B. Now, 38A did contain a lot of legitimate claims from Mr. Dewey's. But 39A and 38B were overwhelmingly – I think there may have been three legitimate claims in one of them – were overwhelmingly contained Mr. – the illegitimate claims that Ms. Ganesh filed on behalf of Mr. Dewey's to get reimbursement for herself. And so the point the government was trying to make at that point in the closing argument was like look at the volume of these Dewey's claims. Clearly, there was a conspiratorial agreement between Mr. Belcher and Ms. Ganesh because he had to have known – there had to be a meeting of the minds given these constant, constant – these constant submissions. But that point holds regardless of the one spreadsheet because there were those constant submissions even without the spreadsheet with Mr. Dewey's legitimate claims. The illegitimate claims were still very voluminous, and so the point remained. Moreover, the point was made in order to establish the elements of a conspiratorial agreement. There was no argument at that point when those spreadsheets were shown with legitimate claims that it was evidence of fraudulent intent or anything of that sort. And there was an acquittal on the conspiracy count, so there's really no viable argument of affecting the jury's verdict here. And in fact, the evidence that Ms. Ganesh submitted Mr. Dewey – Dr. Dewey's name was overwhelming. In fact, she admitted it at a trial. If you look at 2732, her counsel admitted it. It's not something that could be denied. It was established and known, and really that was why the only defensive trial was that she lacked criminal intent, not that she didn't actually make the false and deceptive billings. So in addition to all the other requirements for a NAPU claim, there's no viable basis of prejudice here. And also under Rule 33, this just isn't newly discovered evidence. It was all available to defendants prior to trial – well prior to trial. They had all the information in it, and so it's not newly discovered evidence. I'd like to now – unless the court has more questions about that issue, I'd like to turn to Mr. Belcher's. Mr. Belcher's submission relies almost entirely on this notion that the government, in order to prove that he committed a false statement offense in violation of 1035, had to prove an element of an offense for health care fraud under 1347 intended to fraud. That is inconsistent with not only the record in this case but a well-established law. It's well-established that the sufficiency of the evidence – and Mr. Belcher mentioned Jacksonville v. Virginia at the beginning of his argument here today. That's a sufficiency standard – is measured against the statutory elements of the offense. So the Supreme Court, for example, made this point clear in Masaccio, where in that case the district court instructed the jury on an additional element. The Supreme Court said, okay, well, yes, the district court was instructed on an additional element, but when we're evaluating Jackson v. Virginia sufficiency, we just look to the statutory elements and look to the evidence against those statutory elements to determine whether those elements are satisfied, and we don't look to the additional element instructed to the jury here. And a similar principle, which this court has recognized over and over again, is that the government need not prove all facts charged in an indictment. Instead, only enough facts to prove the essential elements of the crime must be demonstrated at trial. And that's a well-established principle. That one just happened to be from a case called Jenkins from 785 F. Second, 1387. But that's just a well-known principle. So here we have to look at the statutory elements of a 1035 offense, and they're very well – they're well-known. It's – did the defendant make a false statement? Was – did he act knowingly and willfully? Was the false statement material, and was it made in connection with a health care matter? Those are the elements. And in fact, I mean, it's – 1035 is modeled after 1001. You can look at 1001. It's a mirror of the language. And so if you look at the false statement, this court's model of jury instructions, it contains those elements. There's no requirement of an intent to defraud. The Seventh Circuit has so held that there's no requirement of an intent to defraud. So the government did not have to prove as an element that Mr. Belcher possessed the intent to defraud, which is an intent to deprive another of money or property through deceit. Now, of course, the allegations in the conspiracy counts did allege that he possessed the intent to defraud. As I said earlier, we don't need to prove allegations in the indictment that are not necessary to prove an element of offense. Here, not only – we proved it, and we put forward of it because it's relevant to willfulness. This court has held in the Deering case that evidence that a defendant possesses the intent to deceive another, to deprive that other person of money or property is relevant to determining whether a person acted willfully. Now, it's not – we don't have to – we're not required to prove an intent to defraud, but it's relevant. It goes toward willfulness. Counsel? Yes. What was the government's evidence on materiality? The government's evidence on materiality was that – well, first of all, the Cigna employee testified that we just flat out would not – we would not pay out a claim if we knew that the date on it was wrong. And that was corroborated by all the other testimony from other insurance companies because there are a number of reasons why they need to know the correct date and could determine the amount and whether it's reimbursed. But also, in the larger context, the date is important here because it covered up the true nature of what Mr. Belcher was billing for. He provided physical therapy, one hour of physical therapy and one hour of massage therapy, and then he billed one hour of physical therapy for one day, and then he billed the next day one hour of the same physical therapy with the same exact billing codes. Of course, the same billing codes that one would use for one hour of physical therapy are not to be used for one hour of massage therapy. So the different dates was intertwined with the deception of what was actually provided there. So it's clear that Cigna would have wanted to know. They would have clearly wanted to know that, no, Mr. Belcher was not providing one hour of physical therapy on Friday and one hour of physical therapy on Sunday. Actually, what he was doing was providing one hour of physical therapy on Friday and one hour of massage therapy on Saturday. Help me out with this because I find some of these rules a little difficult to keep in mind. Two treatments on the same day are not reimbursable? It could be. But massage therapy is not reimbursable, is that correct? Massage therapy generally is not reimbursable, and I'll just go over some of the Cigna therapy testimony that Mr. Belcher suggests says that massage therapy is covered, and which certainly, considering the matter amenable to the jury's verdict, establishes that it's not covered. On 4956, the witness said, Cigna's coverage policies typically do not cover massage therapy, and it's built into our systems to deny. It's built into the system. And this is, we have clients that have elected to allow that service, and it's a manual process to adjudicate. So what that means is that the default setting is deny massage therapy. Default, deny massage therapy. But a patient can perhaps approach Cigna and say, well, I want mine to be covered here, and can we work it out? And then that's a manual process. There's no evidence that there was a manual process here. The government's theory here is that instead of that he was giving two hours of treatment, one hour was not reimbursable. So the next day he said he gave another hour of the reimbursable treatment. That's the theory. Yes. So he knew that he- Payment for a treatment that wasn't really reimbursable, he lied about when he did it and what he did. Yes, exactly. He lied about the date he provided it, and he also lied about what it was because he used the same exact billing codes for physical therapy on two different days, even though it was a massage therapy. And even if you credit, if you entertain this notion that if Cigna had all the information in front of it, it would have perhaps covered it. Well, it's still material because Cigna, the evidence establishes that Cigna would have wanted to know. They certainly would have wanted to know to determine whether it's one of these very, very narrow policies. But again, the evidence established that there was no such policy in this case, and the evidence had to be measured against the statutory elements of the offense. I believe my time is up, but I'd be happy to take any questions. You've exceeded your time, but we took you over your time. Are there any additional questions from the panel? No. All right, thank you, counsel. Thank you. Mr. Reardon, we'll give you one minute for rebuttal. Mr. Reardon, you're muted. Can the court hear me now? Yes. Yes, we can hear you. Please start over. SHPSI drives a stake through the heart of the government's argument. It doesn't deal with it. In SHPSI, the language was false and fraudulent prejudices and representations. That's exactly the same language that was charged in this indictment as to all counts as to Dr. Belcher. There were five counts of four individual fraud counts and a conspiracy to commit fraud. The jury acquitted on all of those. The fact of the matter is they only argued to the jury that he, as to count 16, that he had an intent to defraud. They were bound to prove it. They have not shown that Cigna would not have paid for this because, in fact, they said, yes, they did pay if you requested it, and they did not ask their witness from Cigna, well, what about Ms. Habibi? Was she entitled to this? Did we put in a policy? Absolutely not. There was no evidence. It's like as if they argued in general it's a crime to carry a gun if you don't have a permit. Now, as to the defendant, we're not offering any evidence as to whether he had a permit, but in general it can be so. No evidence that they couldn't have paid for it. Counsel, may I ask you, if we disagree with you regarding whether or not the government had to prove fraud, do you lose? Well, I will say that yes. You would then have to say that Shipsy was wrongly decided and that when the government alleges fraud in the indictment, they don't have to prove it. It's got nothing – in Shipsy, there was no fraud element in the charge, but the allegations in the indictment, this court said that the theory of – there was a theory by theft, by fraud, quote, and the government was obligated to prove this theory of theft. Well, let me ask you this. What's your response to opposing counsel's position that under a sufficiency of the evidence standard, the government is only required to prove the elements of the statute? Well, Your Honor, the answer to that, and it's got 15 – we cited in our brief the United States versus – Justice said, and then NAMI-NAMI, it's Judge Kleinfeld's opinion. He said no, the government can prove the elements of a crime of robbing a bank on Thursday of NAC-A, that satisfies a robbery charge, but if the indictment alleges robbing Bank B on Wednesday, then they fail. But that's not what we have here. We don't have disparate facts here. I'm sorry? The issue is we don't have disparate facts. We don't have the government alleging one payment that was erroneous and then proving a different payment. We have the government alleging one payment was wrong, giving evidence about that wrong date, and you conceded that that date was wrong. So the issue is whether or not the statutory elements required – whether the government was required to prove anything other than the statutory elements in that context. Your Honor, I disagree respectfully when the government – and Sterling stands for this – if the government alleges a set of facts and a theory of guilt, as they did in Shipsy, as Shipsy says, they have to prove it. They can't prove an alternative theory, and they attempted to prove it. They alleged this was fraud. That was their entire argument to the jury. Which Shipsy are you talking about? Your Honor, that's correct. There was one in 1999 that you authored. There was another one after it was retried and convicted in 2004. We're citing the one in the 28J letter, which is the 1999 opinion at United States v. Shipsy, 190 Fed Third, 1081 – You cited in your briefs, right? No, the 28J was 363, wasn't it? I'm sorry? Didn't you submit the 363 Fed Third in your 28J? No. In the 28J, I submitted – in the brief, we cited a Shipsy opinion for the 2004 one for a different proposition. I confess that this citation to Shipsy could have gone into the briefing the 28J went in yesterday, but this 28J says United States v. Shipsy, 190 Fed Third, 1081, 1999, where offense charged did not contain an element of fraud. An indictment alleged the obtaining of victim's fraud by false and fraudulent representations. The government had approved those allegations of fraud, not some other theory of theft. And that is the whole thing of Shipsy. Shipsy 1 rather than Shipsy 2. Did the statute that was being charged contain an element of fraud in that case? Absolutely not, Your Honor. It's 18 U.S.C. 664, theft or embezzlement from employee benefit plan. It makes no reference to fraud. It's much broader than that. You could have a fraud theory under it, but it's not an element of the offense. You can commit that violation by many means, including ones that aren't fraudulent. But they argued fraud under 664. So there was no element there that they had approved because it was an element. They had approved it because it was their theory of guilt and liability. All right, counsel. Thank you. Ms. West-Hudson, we'll give you a minute for rebuttal as well. Thank you, Your Honor. Okay, so on this waiver issue, I disagree with the government that an objection is required. An objection would be required where a magistrate has issued a report and recommendation, for example, in a suppression matter or something else of that nature. It's never been required. I've been on the CJA panel for over 20 years in Nevada. It's never been required to object to a magistrate's finding requiring counsel or upholding, keeping counsel. How would that even be done? It would be up to Dr. Ganesh to do it on her own. Horowitz wasn't going to do it. But even despite that, she did file an objection to the court's ruling right before her sentencing, and the judge co-struck it. She struck it from the record because she filed an improper person. And then, you know what she did? She filed a writ with this court. She filed a writ as a last-ditch effort at desperation. She filed a writ saying, please let me have my own counsel. And I have cross-referenced to that docket number in the brief in this case. And the writ was not heard. It was ultimately deemed moot because she had already been sentenced. Judge Koh completely disregarded it. On the spreadsheets, it's no small matter. In my brief on pages 33 and 34, I go through all the references to spreadsheets that the government made about spreadsheets that were not evidence of anything false. And, yes, the evidence was produced to the parties prior to trial. But what was newly discovered was the falsity of the evidence in its use by the government. Nobody understood that the government used actual legitimate claims by some other doctor until, really, Kasman, the second lawyer that Ganesh had. And he tried to include it in his motion for new trial by submitting a declaration on February 9th where he said, hey, I just turned to this issue and realized that there's over 40,000 claims that the government said were false that were not false at all. So here's what I'm asking from this court. I'm asking you to reverse it on the counsel issue. If you're not going to do that, I think it's absolutely clear on the sentencing issue. I think it's clear on the trial issue for counsel as well. But at a minimum, this case needs to be remanded to the district court with instruction for an evidentiary hearing on this spreadsheet issue. It is not accurate to say that it did not infect the whole trial. I don't want to call it a fraud on the court, but it's hard to know what it is without having more information from the government, and that requires an evidentiary hearing. Thank you, counsel. Are there any other questions from the panel? All right, it appears not. Thank you to all counsel for your helpful arguments. The case just argued is submitted for decision by the court. That completes our calendar for the day and for the week. We are adjourned. Thank you.
judges: Schroeder, Rawlinson, Bade